**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SHAUN GOODSON,**<br>c/o Cornerstone Law Firm<br>5821 NW 72nd Street<br>Kansas City, MO 64151<br><br>Plaintiff,<br><br>v.<br><br>**CATERPILLAR, INC.,**<br>*Registered Agent:*<br>CSC- LAWYERS INCORPORATING<br>SERVICE COMPANY<br>221 Bolivar St.<br>Jefferson City, MO 65101<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. ______________________<br><br>**REQUEST FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Shaun Goodson by and through his attorneys, and for his cause of action against Defendant Caterpillar, Inc., states and alleges as follows:

**Parties and Jurisdiction**

1. This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

2. Plaintiff Shaun Goodson (hereinafter "Plaintiff") is a citizen of the United States, domiciled in Sturkie, Fulton County, Arkansas.

3. Defendant Caterpillar, Inc., (hereinafter "Defendant" or "Caterpillar") is a corporation incorporated under the laws of Delaware, with its principal place of business located in Irving, Texas.

4. In each of 20 or more calendar weeks in the current or preceding calendar year, Caterpillar employed fifteen (15) or more employees.

5. In each of 20 or more calendar weeks in the current or preceding calendar year, Caterpillar employed more than five hundred (500) employees.

6. At all relevant times, Caterpillar was engaged in interstate commerce.

7. Caterpillar is an employer within the meaning of Title VII.

8. This Court has personal jurisdiction over the parties because Caterpillar conducts substantial and continuous business within the Western District of Missouri, specifically in Pomona, Howell County, Missouri.

9. Jurisdiction is proper in the Western District of Missouri pursuant to 28 U.S.C. § 1331 as some or all of Plaintiff's claims arise under the laws of the United States.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

**Administrative Procedures**

11. On or about March 1, 2022, Plaintiff timely filed a charge of discrimination against Caterpillar, alleging discrimination based on his sex, as well as retaliation, with the United States Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") (attached as Exhibit 1 and incorporated herein by reference).

12. On or about March 17, 2023, the EEOC issued Plaintiff a Notice of Right to Sue with regard to his claims (attached as Exhibit 2 and incorporated herein by reference).

13. This lawsuit was filed within 90 days of the issuance of the EEOC's Notice of Right to Sue.

14. The aforementioned Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties, and accordingly, the sweep of the judicial complaint may be and is as broad as the scope of an EEOC investigation which could reasonably be expected to have grown out of the Charge of Discrimination.

15. Plaintiff has satisfied all private administrative and judicial prerequisites to the institution of this action.

16. This Complaint is filed within the applicable statute of limitations.

**Additional Factual Allegations**

17. Plaintiff began working for Caterpillar at its Pomona, Missouri, facility as a machine operator in approximately October 2020.

18. Plaintiff is gay.

19. When Plaintiff began working for Caterpillar, he worked the third (overnight) shift.

20. At that time, Plaintiff's supervisor ("J.F.") was very condescending towards Plaintiff, to the point of becoming abusive.

21. J.F. would nitpick and belittle Plaintiff's work.

22. J.F. would also scream at Plaintiff for seemingly insignificant issues.

23. J.F. did not subject the other employees he supervised to the same abusive treatment to which he subjected Plaintiff.

24. J.F. and Plaintiff's longer-tenured coworkers would also watch Plaintiff perform new tasks incorrectly instead of explaining easier, safer, and/or more efficient ways to perform them.

25. In approximately June 2021, Plaintiff sent a text message to J.F. substantially expressing, "I know you are treating me this way because I am gay," in reference to the abusive treatment to which J.F. was subjecting him.

26. J.F. did not respond to Plaintiff's text message to deny Plaintiff's contention that J.F. was subjecting him to abusive treatment because of Plaintiff's sexual orientation.

27. Plaintiff reported J.F.'s treatment to Caterpillar's human resources department ("HR") after he sent the text message to J.F. contending that J.F. was subjecting him to abusive treatment because of Plaintiff's sexual orientation.

28. Plaintiff met with one of Caterpillar's HR representatives in approximately June 2021 after he reported J.F.'s treatment.

29. In this June 2021 meeting, Plaintiff again told the HR representative that he believed J.F. was subjecting him to this treatment because of Plaintiff's sexual orientation.

30. In this meeting, the HR representative told Plaintiff that if he did not like working for Caterpillar, "there's the door."

31. The HR representative's statement to Plaintiff that if he did not like working for Caterpillar, "there's the door," was a reflection of Caterpillar's position that it had no intention of correcting or disciplining J.F.'s discriminatory behavior.

32. J.F.'s abusive treatment of Plaintiff continued until approximately July 2021.

33. On or about July 2021, Plaintiff again reported J.F.'s abuse to HR because J.F. was trying to force Plaintiff to perform his work in an extremely unsafe manner.

34. As a result of the July 2021 complaint against Plaintiff's supervisor J.F., Plaintiff was transferred to the second (evening) shift.

35. In approximately mid-October 2021, a maintenance worker for Caterpillar came into Plaintiff's work area singing "Y.M.C.A" by the Village People and doing the dance commonly associated with that song.

36. "Y.M.C.A.," and the Village People generally, are a song and musical group strongly associated with the gay community by the general public.

37. It was evident that Caterpillar's maintenance worker's song and dance were directed at Plaintiff because there were no other employees in the maintenance worker's general vicinity.

38. Also, as the maintenance worker got closer to Plaintiff after singing the song and doing the corresponding dance, he called Plaintiff a "cocksucker."

39. Use of such an aggressive epithet is unacceptable in the workplace.

40. Plaintiff had also done nothing to the maintenance worker that would lead a reasonable person to consider using such an aggressive slur toward another person.

41. Plaintiff understood this maintenance worker's behavior to be meant as intimidation or harassment on the basis of Plaintiff's sexual orientation.

42. Upon information and belief, Plaintiff alleges that prior to his employment with Caterpillar, a group of Caterpillar's management in Pomona was known to have sung "Y.M.C.A" and danced the associated dance in a mocking manner at the beginning of Pride Week.

43. Plaintiff reported the maintenance worker's song and dance and use of the slur to a different HR representative ("D.B.") from the representative to whom Plaintiff had made his prior report.

44. As a result of this report, Plaintiff was put on a one-week paid leave.

45. Plaintiff did not ask to be placed on leave.

46. Approximately two (2) days after Plaintiff came back from leave, he was suspended for three (3) days without pay for making a minor error.

47. The error Plaintiff committed was failing to perform a task which is an unnecessary redundancy in documentation.

48. Prior to Plaintiff's suspension, many of Plaintiff's coworkers had regularly made the same omission but were not subjected to discipline.

49. It was the job duty of one of Caterpillar's employees on the third shift to note and correct omissions like the one for which Plaintiff was suspended.

50. The employee on the third shift did not note and correct Plaintiff's omission but was not subjected to discipline.

51. On or about October 22, 2021, as Plaintiff was leaving his house to go to work, he found that someone has written "QUIT OR DIE" on the side of his vehicle.

52. It is unreasonable to believe that someone other than one of Caterpillar's employees wrote the threat on Plaintiff's car.

53. The only reasonable interpretation for this threat was that if Plaintiff were to return to work, he would be physically harmed or killed.

54. Upon information and belief, Plaintiff alleges that the only people employed at Caterpillar's Pomona, Missouri, facility with access to his address were management and employees in the HR department.

55. Plaintiff contacted D.B. upon finding the message on his vehicle and told her that he did not feel safe coming in to work.

56. Plaintiff also told D.B. that he believed the message was placed on his car because of his sexual orientation and because he had made reports against other employees for discrimination because of his sexual orientation.

57. Plaintiff also filed police reports with both the Fulton County, Arkansas, Sheriff's Department, where his house is located, and the Howell County, Missouri, Sheriff's Department, where his employer was located.

58. On or about November 5, 2021, D.B. informed Plaintiff that an investigation regarding Plaintiff's report of discrimination had been conducted and subsequently closed.

59. In describing Caterpillar's investigation into Plaintiff's report of the threatening message on his car, D.B. made no indication that any corrective action or safety measures would be taken to protect Plaintiff from threats of physical harm while at work.

60. For his physical safety, Plaintiff chose to stay on leave.

61. After his discussion with D.B., Plaintiff informed Caterpillar that he wanted to return to work and that he did not want to resign his job, but only wanted to come back to work if Caterpillar could show that it was taking actions to ensure that Plaintiff would be free from threats of physical harm while at work.

62. Caterpillar never provided Plaintiff with assurances that it was taking actions to ensure that Plaintiff would be free from threats of physical harm while at work.

63. On or around December 2, 2021, D.B. notified Plaintiff that his failure to return to work by December 1, 2021, constituted a "no-call, no-show" and Caterpillar was terminating his employment effectively immediately.

64. Plaintiff was the only employee at Caterpillar's Pomona facility that was out with regard to their sexual orientation.

**COUNT I**
**Violation under 42 U.S.C. §§ 2000e *et seq.***
**Sex Discrimination – Termination**

65. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, Paragraphs 1-64.

66. Plaintiff is gay and therefore a member of a protected class based on his sex.

67. Caterpillar terminated Plaintiff's employment.

68. Plaintiff's membership in a protected class was at least a motivating factor in Caterpillar's decision to terminate Plaintiff's employment.

69. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Caterpillar, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Caterpillar, thus making Caterpillar liable for said actions under the doctrine of *respondeat superior*.

70. Caterpillar failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

71. Caterpillar failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

72. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Caterpillar, based on his sexual orientation, in violation of Title VII.

73. As a direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

74. As a further direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

75. By failing to take prompt and effective remedial action, Caterpillar in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

76. Caterpillar's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Caterpillar or to deter it and other companies from like conduct in the future.

77. Plaintiff is entitled to recover reasonable attorneys' fees from Caterpillar as provided for in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Caterpillar for economic damages, including, but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**<u>COUNT II</u>**
**Violation under 42 U.S.C. §§ 2000e *et seq.***
**Sex Discrimination – Constructive Discharge**
***(Plead in the Alternative to Count I: Sex Discrimination – Termination)***

78. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, Paragraphs 1-64.

79. Plaintiff is gay and therefore a member of a protected class based on his sex.

80. Caterpillar subjected Plaintiff to treatment that made Plaintiff's work intolerable.

81. Plaintiff's membership in a protected class was at least a motivating factor for the intolerable treatment to which Plaintiff was subjected.

82. Caterpillar's conduct was directed toward forcing Plaintiff to quit.

83. Caterpillar failed to take prompt and remedial action to correct the harassment to which Plaintiff was subjected.

84. Any decision by Plaintiff to terminate his employment was a reasonably foreseeable consequence of Caterpillar's conduct.

85. The conduct to which Caterpillar subjected Plaintiff was such that a reasonable person in his situation would find it intolerable and find that resignation was the only reasonable alternative.

86. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Caterpillar, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Caterpillar, thus making Caterpillar liable for said actions under the doctrine of *respondeat superior*.

87. Caterpillar failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

88. Caterpillar failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

89. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Caterpillar, based on his sex, in violation of Title VII.

90. As a direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

91. As a further direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

92. By failing to take prompt and effective remedial action, Caterpillar in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

93. Caterpillar's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Caterpillar or to deter it and other companies from like conduct in the future.

94. Plaintiff is entitled to recover reasonable attorneys' fees from Caterpillar as provided for in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Caterpillar for economic damages, including, but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
**Violation under 42 U.S.C. § 2000e *et. seq.***
**Retaliation – Termination**

95. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, Paragraphs 1-64.

96. Plaintiff engaged in protected activity by making complaints of sex discrimination and harassment within the workplace.

97. Caterpillar suspended Plaintiff's employment without pay.

98. Caterpillar terminated Plaintiff's employment.

99. Plaintiff's good faith reports of discrimination were a determining factor in Caterpillar's decision to suspend Plaintiff's employment without pay and subsequently terminate Plaintiff's employment.

100. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Caterpillar, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Caterpillar, thus making Caterpillar liable for said actions under the doctrine of *respondeat superior*.

101. Caterpillar failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

102. Caterpillar failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

103. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Caterpillar based on his protected activity in violation of Title VII.

104. As a direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

105. As a further direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

106. By failing to take prompt and effective remedial action, Caterpillar in effect condoned, ratified, and/or authorized retaliation against Plaintiff.

107. Caterpillar's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Caterpillar or to deter it and other companies from like conduct in the future.

108. Plaintiff is entitled to recover reasonable attorneys' fees from Caterpillar as provided in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgement in his favor and against Caterpillar for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**Violation under 42 U.S.C. §§ 2000e *et seq.***
**Retaliation – Constructive Discharge**
***(Plead in the Alternative to Count III: Retaliation – Termination)***

109. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, Paragraphs 1-64.

110. Plaintiff engaged in protected activity by making complaints of sex discrimination and harassment within the workplace.

111. Caterpillar subjected Plaintiff to treatment that made Plaintiff's work intolerable.

112. Plaintiff's good faith reports of discrimination were a determining factor for the intolerable treatment to which Plaintiff was subjected.

113. Caterpillar's conduct was directed toward forcing Plaintiff to quit.

114. Caterpillar failed to take prompt and remedial action to correct the harassment to which Plaintiff was subjected.

115. Any decision by Plaintiff to terminate his employment was a reasonably foreseeable consequence of Caterpillar's conduct.

116. The conduct to which Caterpillar subjected Plaintiff was such that a reasonable person in his situation would find it intolerable and find that resignation was the only reasonable alternative.

117. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Caterpillar, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Caterpillar, thus making Caterpillar liable for said actions under the doctrine of *respondeat superior*.

118. Caterpillar failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

119. Caterpillar failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

120. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Caterpillar based on his protected activity in violation of Title VII.

121. As a direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

122. As a further direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

123. By failing to take prompt and effective remedial action, Caterpillar in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

124. Caterpillar's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Caterpillar or to deter it and other companies from like conduct in the future.

125. Plaintiff is entitled to recover reasonable attorneys' fees from Caterpillar as provided for in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Caterpillar for economic damages, including, but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages;

for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT V**
**Violation under 42 U.S.C. § 2000e *et. seq.***
**Sex Discrimination – Hostile Work Environment**

126. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, Paragraphs 1-64.

127. Plaintiff is gay and therefore a member of a protected class based on his sex.

128. Throughout Plaintiff's employment, Caterpillar subjected Plaintiff to severe, pervasive, and unwelcome harassment based on his sex.

129. The unwelcome, offensive conducted engaged in by Plaintiff's supervisors and coworkers includes but is not limited to the following:

a. Being substantially more critical of Plaintiff's work than of the work of Plaintiff's coworkers;

b. Screaming at Plaintiff but not at Plaintiff's coworkers;

c. Watching Plaintiff perform tasks new to him incorrectly instead of teaching him easier, safer, and/or more efficient methods;

d. Singing and dancing to a song stereotypically associated with the gay community toward Plaintiff without context;

e. Calling Plaintiff a "cocksucker";

f. Disciplining Plaintiff for conduct for which Plaintiff's coworkers were not subjected to discipline; and

g. Writing "QUIT OR DIE" on Plaintiff's vehicle.

130. The actions and conduct of the above-described perpetrator(s), as set forth herein, constituted unwelcome conduct of a sexual nature.

131. The harassment to which Plaintiff was subjected affected a term, condition, or privilege of his employment because the conduct was continuous, outrageous, humiliating, and reasonably interfered with his ability to perform the functions of his employment.

132. The actions and conduct of the above-described perpetrator(s), as set forth herein, created an abusive, hostile, offensive, and intimidating work environment which detrimentally affected Plaintiff.

133. The conduct described herein would have detrimentally affected a reasonable person of the same sexual orientation in Plaintiff's position.

134. Due to the severe and pervasive harassment to which Plaintiff was subjected, his working environment was so intimidating, hostile, and offensive that he was forced to resign his employment with Caterpillar.

135. Plaintiff's sexual orientation was a motivating or determining factor in the harassment to which he was subjected.

136. Caterpillar knew or should have known of the hostile work environment to which Plaintiff was subjected but failed to exercise reasonable care to prevent and promptly correct it.

137. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Caterpillar, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Caterpillar, thus making Caterpillar liable for said actions under the doctrine of *respondeat superior*.

138. Caterpillar failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

139. Caterpillar failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

140. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Caterpillar, based on his sex, in violation of Title VII.

141. As a direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

142. As a further direct and proximate result of Caterpillar's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

143. By failing to take prompt and effective remedial action, Caterpillar in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

144. Caterpillar's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Caterpillar or to deter it and other companies from like conduct in the future.

145. Plaintiff is entitled to recover reasonable attorneys' fees from Caterpillar as provided for in Title VII.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant Caterpillar for economic damages, including, but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment

interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff requests a trial by jury, in Springfield, Missouri, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: *_/s/ Joshua P. Wunderlich_*

Joshua P. Wunderlich MO BAR 64254
j.wunderlich@cornerstonefirm.com
5821 NW 72nd St.
Kansas City, Missouri 64151
Telephone (816) 581-4040
Facsimile (816) 741-8889

ATTORNEY FOR PLAINTIFF